

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00380-CR

ADRIAN LEE WHITEMON                                  APPELLANT

V.

THE STATE OF TEXAS                                       STATE

----------

### FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1209550D

----------

## OPINION

----------

A jury convicted Appellant Adrian Lee Whitemon of possession of four or more grams of cocaine but less than 200 grams. The trial court found the enhancement paragraph to be true and sentenced him to thirty-five years' confinement. In three points, Appellant contends that the trial court erred by improperly limiting his voir dire questions, by denying his motion to suppress the arrest-and-search warrant, and by admitting evidence of his prior bad acts.

Because the trial court committed no reversible error, we affirm the trial court's judgment.

**Motion to Suppress**

The police executed a no-knock search-and-arrest warrant and found drugs, money, and several people, including Appellant, inside the apartment. In his second point, Appellant contends that the trial court erred by denying his motion to suppress the search-and-arrest warrant and by admitting the evidence obtained via the warrant. He argues that although the warrant contained a description of "Cush" or "Kush," the person to be arrested, the supporting affidavit contained no description, not even a statement of the gender of the person to be arrested. In addition to arguing that the warrant fails for lack of specificity, Appellant also argues that it fails for lack of corroboration.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.[1] We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor.[2]

---

[1] *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[2] *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.[3]

In assessing the sufficiency of an affidavit for an arrest warrant or search warrant, the reviewing court is limited to the four corners of the affidavit.[4] The reviewing court should interpret the affidavit in a common sense and realistic manner, recognizing that the magistrate was permitted to draw reasonable inferences.[5] We must defer to the magistrate's finding of probable cause if the affidavit demonstrates a substantial basis for his conclusion.[6]

Appellant points out that article 15.02 of the Texas Code of Criminal Procedure requires an arrest warrant to "specify the name of the person whose arrest is ordered, if it be known, if unknown, then some reasonably definite description must be given."[7] Further, as both sides note, the law is well established that information provided by an informant must contain some indicia

---

[3]*State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

[4]*Jones v. State*, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S. 921 (1993).

[5]*Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).

[6]*Rodriguez v. State*, 232 S.W.3d 55, 64 (Tex. Crim. App. 2007).

[7]Tex. Code Crim. Proc. Ann. art. 15.02 (West 2005).

of reliability or be reasonably corroborated by police before it can be used to justify a search.[8]

In denying the motion to suppress, the trial court made oral findings of fact and conclusions of law:

> All right. After reviewing State's Exhibit No. 1 and hearing testimony and cross-examination, the Court, after doing so, concludes as a matter of law and matter of fact that the Defendant's motion fails.
>
> The warrant does establish probable cause that at 2377 Dalworth, Apartment 235, Grand Prairie Texas, Tarrant County, . . . Texas, that Grand Prairie police officers did have probable cause to request and secure a warrant for that location on the basis that the information that's contained therein, upon which the officers went into the location and made a number of discoveries that have been identified as State's Exhibit 2 through 18, inclusively, and State's Exhibit 22 that have been submitted and received as conditional.
>
> Still relying on other additional information that still needs to be brought forward, it's still the conclusion of the Court that the information, the evidence obtained therein, is admissible and was done in conformity of the Fourth and Fourteenth Amendments of the United States Constitution, Article 1, Section 9 of the State Constitution.
>
> Therefore, the Defendant's motion should be and is hereby denied.
>
> Are there any additional findings of fact and conclusions of law, State?
>
> [Prosecutor]: And that all items that were seized from that apartment on that date and time are admissible as a matter of law and fact.

---

[8] *Illinois v. Gates*, 462 U.S. 213, 242, 103 S. Ct. 2317, 2334 (1983).

THE COURT: That is correct. And that's why I identified them specifically. If there are additional items that you intend to offer that were not—have not been presented to the Court thus far, that would also be admissible and that they were collected lawfully.

The search-and-arrest warrant was based on two affidavits. The first affidavit included the name Kush or Cush and a physical description of this person: "B/M 5'2"–5'5" 145–60 lbs, BLK/BRO, Tear drop tattoos on near right eye and multiple tat[t]oos all upper torso and arms." This is a "reasonably definite description" under article 15.02.[9]

The affidavits show that the police used their informant to make two controlled buys. Their information was that Cush or Kush was selling crack cocaine out of the apartment. One affidavit contains the statement that the confidential informant had, in the past, provided information that "ha[d] led to the execution of several narcotic search warrants and the arrest of several narcotic dealers within the city limits of Grand Prairie." The affidavit also describes the procedure that the police used for sending the informant to make the controlled buys. Thus, the affidavits provide some indicia of reliability of the informant. Based on the contents of both affidavits and applying the appropriate standard of review,[10] we hold the affidavits sufficient to support the trial court's probable

---

[9] *See* Tex. Code Crim. Proc. Ann. art. 15.02; *Walthall v. State*, 594 S.W.2d 74, 80–81 (Tex. Crim. App. [Panel Op.] 1980).

[10] See *Gates*, 462 U.S. at 242, 103 S. Ct. at 2334; *Moreno v. State*, 415 S.W.3d 284, 287 (Tex. Crim. App. 2013).

cause finding and sufficient to support the challenged warrant. The trial court therefore did not err by denying Appellant's motion to suppress. Because of our conclusion that the trial court properly denied Appellant's motion to suppress, we do not address the State's contention that Appellant lacked standing to challenge the police entry into the apartment he claimed to be merely visiting.[11] We overrule Appellant's second point.

**Limitations on Voir Dire**

In his first point, Appellant argues that the trial court abused its discretion by preventing the defense from asking proper voir dire questions. In *Standefer v. State*,[12] a 5-4 decision with two judges concurring with the majority, the Texas Court of Criminal Appeals held,

> [A] question is a commitment question if one or more of the possible answers is that the prospective juror would resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the question.
>
> . . . .
>
> [F]or a commitment question to be proper, one of the possible answers to that question must give rise to a valid challenge for cause.[13]

Before *Standefer*, the emphasis was not on whether the question was a commitment question but on whether the commitment was to treat the facts of

---

[11]*See* Tex. R. App. P. 47.1.

[12]59 S.W.3d 177, 180 (Tex. Crim. App. 2001).

[13]*Id. at* 180–82.

6

the specific case on trial in a particular manner.  Additionally, the law recognized that a legitimate purpose of posing voir dire questions was not solely to seek grounds for valid challenges for cause, but also to enable the litigant to intelligently exercise peremptory challenges.  As our sister court in San Antonio explained almost twenty years ago,

> A voir dire question is proper if its purpose is to discover a venire member's view on an issue applicable to the case.  Voir dire is intended to expose bias or prejudice which might prevent full and fair consideration of the evidence to be presented at trial.  Therefore, if a question is proper, the denial of an answer prevents the intelligent exercise of peremptory challenges and harm is shown.[14]

And four years before *Standefer*, the Texas Court of Criminal Appeals explained in *Atkins v. State*,[15]

> In *Shipley*,[16] we held that control of the voir dire examination is within the sound discretion of the trial judge and that the trial judge is given wide discretion in this area.  Although this is true, a trial judge must not exceed his discretion by denying a proper question or allowing an improper question.  And in a case such as this, a trial judge must determine if the hypothetical is used to explain the law or to commit the venire to specific facts of the case.  To find that the question was used for anything other than to explain the law would be an abuse of discretion and would constitute reversible error.[17]

---

[14]*Clemments v. State*, 940 S.W.2d 207, 210 (Tex. App.—San Antonio 1996, pet. ref'd) (citing *Ex parte McKay*, 819 S.W.2d 478, 482 (Tex. Crim. App. 1990)).

[15]951 S.W.2d 787, 790 (Tex. Crim. App. 1997).

[16]*Shipley v. State*, 790 S.W.2d 604 (Tex. Crim. App. 1990).

[17]*Atkins*, 951 S.W.2d at 790.

In *Atkins*, a case in which a defendant was being tried for possession of a residue amount of cocaine found in a crack pipe, the questions were, "Is there anybody who would be unable to convict somebody for possession of a residue amount of cocaine . . . ?" and "Is there anyone who would be unable to convict in this type of circumstance?"[18] The *Atkins* court held,

> This type of questioning, using a hypothetical or otherwise, is improper and serves no purpose other than to commit the jury to [a] specific set of facts prior to the presentation of any evidence at trial.[19]

In the case now before this court, Appellant asked the following questions:

**1. If a person walks into a house, somebody else's house[,] and there's [a] controlled substance in there, do you think that means they're automatically guilty?**

We cannot say that this is a question that seeks to commit a juror improperly to a specific set of facts or, that is, to treating a specific set of facts in a particular way. It appears to be a question about mere presence:

> [W]hen the theory of prosecution is that the accused or another acted together in possessing a narcotic drug, the evidence must affirmatively link the accused to the contraband in such a manner that it can be concluded that he had knowledge of the contraband as well as control over it. Mere presence alone at a place where the contraband is being used or possessed by others does not justify a finding of joint possession, or constitute one a party to an offense.[20]

---

[18]*Id.* at 789.

[19]*Id.*

[20]*Martin v. State*, 753 S.W.2d 384, 386 (Tex. Crim. App. 1988) (citations omitted).

8

It may, however, run afoul of the prohibition against asking how a juror will respond to the specific facts of the case at bar. Appellant's defense was that he walked into someone else's apartment where drugs were found, that he was merely present when the police arrived, and that he did not knowingly or intentionally exercise care, custody, or control over the contraband. The question may inquire about the venire member's reaction to the specific facts of this case rather than his ability to follow the law, as discussed in *Atkins*.[21]

**2.     Do you think that the State would have to show more connection than just being in the same house with a controlled substance to find someone guilty?**

This is a closer inquiry, because the question includes the fact that the contraband is in a habitation but is also an inquiry into the law upon which Appellant was entitled to rely: mere presence is not sufficient to support conviction.[22]

**3.     Would you agree that the State has to show for possession that a person intentionally and knowingly had the substance or exercised control over it?**

This question is a commitment question, but it is also a statement of the law upon which Appellant was entitled to rely.[23] As the *Standefer* court explained,

---

[21] *See Atkins*, 951 S.W.2d at 789–90.

[22] *See id.*; *Martin*, 753 S.W.2d at 386.

[23] *See Atkins*, 951 S.W.2d at 789–90; *Martin*, 753 S.W.2d at 386.

> [T]he inquiry for improper commitment questions has two steps: (1) Is the question a commitment question, and (2) Does the question include facts—and only those facts—that lead to a valid challenge for cause? If the answer to (1) is "yes" and the answer to (2) is "no," then the question is an improper commitment question, and the trial court should not allow the question.[24]

Under the *Standefer* test, the question properly inquires into the venire member's ability to follow the law on which Appellant was entitled to rely without injecting specific facts of the case into the inquiry and could lead to a challenge for cause.[25] Appellant was allowed to ask this question, and the prospective juror answered, "Yes." Appellant does not complain that he wanted to ask that question of other members of the venire.

### 4. Okay. The fact that the[y are] in mere proximity of it wouldn't necessarily be enough to convince you?

This final question does not inquire whether the venire can follow the law. Rather, this question asks what it would take to convince the venire member in the case at bar. This question therefore improperly inquires into how the venire member would treat the evidence expected to be presented at trial.[26]

We do not need to enter the fray concerning whether the lawyers may ask questions that enable them to exercise peremptory strikes with some degree of intelligence because even if we assume that the trial court erred by sustaining

---

[24] *Standefer*, 59 S.W.3d at 182–83.

[25] *See id.*

[26] *See id.*; *Atkins*, 951 S.W.2d at 789–90.

the State's objections to Appellant's first, second, and fourth questions set out above, we hold that such error was harmless.

Appellant argues that by sustaining the objections to his first, second, and fourth questions, the trial court violated his constitutional rights to counsel, to be heard, to a trial by a fair and impartial jury, and to due process. He does not, however, direct us to any portion of the record at which he raised these constitutional claims before the trial court. They are therefore not preserved.[27] Appellant also argues that the voir dire error alleged is of constitutional magnitude. The Texas Court of Criminal Appeals, however, instructs us to consider this type of voir dire error nonconstitutional error under rule of appellate procedure 44.2(b).[28] We therefore apply rule 44.2(b) and disregard the error if it did not affect Appellant's substantial rights.[29]

A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.[30] Conversely, an

---

[27] *See* Tex. R. App. P. 33.1(a); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013); *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009); *Sanchez v. State*, 418 S.W.3d 302, 306 (Tex. App.—Fort Worth 2013, pet. ref'd).

[28] *Sanchez v. State*, 165 S.W.3d 707, 713 (Tex. Crim. App. 2005); Tex. R. App. P. 44.2(b).

[29] *See* Tex. R. App. P. 44.2(b); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

[30] *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).

error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect."[31]  In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case.[32]  We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable.[33]

Even if the trial court erred in sustaining the State's objections to the first, second, and fourth questions set out above, the error was harmless beyond a reasonable doubt, based on the record before us.  An inability to ask those three questions did not have substantial and injurious effect or influence in determining the jury's verdict, nor did it prevent Appellant's access to information necessary for a proper challenge for cause.  All four questions before us dealt with the venire's ability to properly apply the law of mere presence.  The third question was allowed to be asked and answered; it inquired into the venire's ability to

---

[31]*Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

[32]*Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

[33]*Id.* at 355–56.

12

properly apply the law of mere presence. Nothing in the record suggests that Appellant was prohibited from asking this question of other members of the venire individually.

We overrule Appellant's first point.

**Extraneous Bad Acts**

In his third point, Appellant argues that the trial court abused its discretion in the guilt phase by admitting evidence of his "extraneous bad acts concerning [his] statement to a bond officer." An appellate court reviews a trial court's decision to admit evidence for an abuse of discretion.[34] A trial court abuses its discretion in admitting evidence if that decision falls outside the wide zone of reasonable disagreement.[35]

Appellant's defense at trial was that he was merely a visitor at the apartment and that none of the cocaine found there belonged to him. The bond officer testified on rebuttal that Appellant had said that his drug of choice was cocaine. Although this testimony is clearly prejudicial (why else would the State have offered it in rebuttal), the question is whether it is unfairly prejudicial.[36] As the State correctly argues, any theoretical unfair prejudice did not outweigh the

---

[34] *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

[35] *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

[36] *Wheeler v. State*, 67 S.W.3d 879, 888–89 (Tex. Crim. App. 2002).

probative value of the testimony, in light of Appellant's defense that he did not knowingly or intentionally possess the cocaine found in the apartment.[37] The State was required to prove intentional and knowing possession, and the case was a circumstantial evidence case. The bond officer's testimony was brief and to the point. It directly attacked Appellant's defense and directly supported the State's theory of the case. The testimony was not likely to have confused the jury or to cause the jury to wrongfully convict Appellant.[38] Additionally, as the State argues, the statement is Appellant's own, an admission by a party opponent[39] as well as an admission against penal interest.[40] We therefore hold that the probative value of the statement was not substantially outweighed by the danger of unfair prejudice.[41] Consequently, the trial court did not abuse its

---

[37] *See Owen v. State*, No. 02-03-00164-CR, 2004 WL 966323, at *6 (Tex. App.—Fort Worth May 6, 2004, no pet.) (mem. op., not designated for publication) (holding evidence that Owen had previously received drugs via Fedex and had previously possessed methamphetamine admissible rebuttal evidence to show current knowing and intentional possession of Fedex package containing methamphetamine in face of her denial).

[38] *See Maranda v. State*, 253 S.W.3d 762, 768 (Tex. App.—Amarillo 2007, pet. dism'd) (holding evidence of drug use following aggravated robbery relevant to defendant's motive to commit robbery and that it did not confuse jury or lead them to wrongly convict and took minimal time to develop).

[39] *See* Tex. R. Evid. 801(E)(2).

[40] *See* Tex. R. Evid. 803(24).

[41] *See* Tex. R. Evid. 403.

discretion by admitting Appellant's statement to the bond officer, and we overrule Appellant's third point.

**Conclusion**

Having overruled Appellant's three points, we affirm the trial court's judgment.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

WALKER, J., concurs without opinion.

PUBLISH

DELIVERED:  March 5, 2015