

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00509-CR

Malcolm **GANDY**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2014CR6350
Honorable Melisa C. Skinner, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Rebeca C. Martinez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: February 13, 2019

AFFIRMED

After the trial court denied Malcolm Gandy's motion to suppress, he pled nolo contendere to the offense of murder and was sentenced to twenty-five years in prison in accordance with a plea bargain agreement. On appeal, Gandy challenges the trial court's denial of his motion to suppress asserting: (1) the affidavit supporting his arrest warrant contained stale information and statements that were deliberate falsehoods or made in reckless disregard of the truth; and (2) he was not read his *Miranda* warnings before being questioned by the police, and the statements he made were involuntary. We affirm the trial court's judgment.

## PROCEDURAL BACKGROUND

On July 29, 2014, Gandy was indicted for murdering Jake Arrendondo on or about September 1, 2011, by shooting Arredondo with a firearm. On February 25, 2015, Gandy filed a notice of intent to raise an insanity defense. Based on this notice, the State filed a motion for a psychiatric evaluation of Gandy on June 10, 2015, and the trial court signed an order the same day appointing Dr. Brian Skop to conduct the evaluation. On September 20, 2015, Gandy filed a notice withdrawing his insanity defense.

On September 21, 2015, the trial court held a hearing on Gandy's motion to suppress. Gandy sought to suppress statements he made during questioning by the police on May 16, 2014. At the conclusion of the hearing, the trial court denied the motion and dictated its findings and conclusions into the record. The trial court then asked Gandy questions regarding his election to have the jury assess punishment. Based on Gandy's responses, the trial court raised a concern regarding Gandy's competency and signed an order referring the matter to a magistrate to conduct a competency hearing.

On September 22, 2015, the State filed a motion for a psychological examination, and on September 25, 2015, Gandy filed a motion for a competency examination. On October 5, 2015, the magistrate signed an order granting a competency evaluation by Dr. Brian Skop.

On November 9, 2015, a hearing was held on the competency disposition. The magistrate announced it received Dr. Skop's competency evaluation, and Dr. Skop found Gandy to be competent to stand trial. Based on opinions Dr. Skop expressed regarding Gandy's serious mental illness diagnoses, defense counsel requested a jury trial on the issue of competency. The magistrate announced the cause would be set for a jury trial on the issue of competency.

On February 8, 2016, the magistrate called for announcements on the competency trial. Defense counsel announced he met with Dr. Skop, and Gandy was abandoning his request for a

jury trial on the issue of competency. The magistrate found Gandy competent to stand trial and referred the matter back to the trial court.

On May 23, 2016, Gandy entered his plea of nolo contendere. The trial court found Gandy guilty and ordered a presentence investigation. On July 19, 2016, the trial court sentenced Gandy in accordance with the plea bargain agreement. Gandy timely filed a notice of appeal challenging the trial court's denial of his motion to suppress.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189-90 (Tex. Crim. App. 2018); *Love v. State*, 543 S.W.3d 835, 840 (Tex. Crim. App. 2016). Although we give almost total deference to the trial court's determination of historical facts, we conduct a de novo review of the trial court's application of the law to those facts. *Lerma*, 543 S.W.3d at 190; *Love*, 543 S.W.3d at 840. The trial court is the sole judge of the credibility of the witnesses, and we examine the evidence in the light most favorable to the trial court's ruling. *Lerma*, 543 S.W.3d at 190.

## ARREST WARRANT

In his first two issues, Gandy contends the trial court erred in denying his motion to suppress based on his challenges to the arrest warrant. Gandy asserts the affidavit supporting the arrest warrant was stale and contained deliberate falsehoods or statements made in reckless disregard of the truth.

"In assessing the sufficiency of an affidavit for an arrest warrant, the reviewing court is limited to the four corners of the affidavit." *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004); *see also Whitemon v. State*, 460 S.W.3d 170, 174 (Tex. App.—Fort Worth 2015, pet. ref'd) (same). "The reviewing court should interpret the affidavit in a common sense and realistic manner, recognizing that the magistrate was permitted to draw reasonable inferences." *Hankins*,

132 S.W.3d at 388; *see also Whitemon*, 460 S.W.3d at 174 (same). "We must defer to the magistrate's finding of probable cause if the affidavit demonstrates a substantial basis for his conclusion." *Rodriguez v. State*, 232 S.W.3d 55, 64 (Tex. Crim. App. 2007).

The State questions whether a claim of staleness is applicable to an arrest warrant as opposed to a search warrant. *Compare Cardoso v. State*, 438 S.W.3d 815, 821 (Tex. App.—San Antonio 2014, no pet.) ("Determining whether the information is stale should also involve consideration of the type of property to be searched and the probability that the property may have been relocated.") *with Valadez v. State*, 476 S.W.3d 661, 667 (Tex. App.—San Antonio 2015, pet. ref'd) ("An arrest warrant affidavit must provide the magistrate with sufficient information to support an independent determination that probable cause exists to believe that the accused has committed a crime.") (internal quotation omitted). Assuming a claim of staleness is applicable to an arrest warrant, the affidavit in support of Gandy's arrest warrant was admitted into evidence as an exhibit at the suppression hearing. Although Gandy paid the fee for the preparation of the portion of the reporter's record transcribing the suppression hearing, he did not pay for the preparation of an exhibit volume. By order dated April 6, 2018, Gandy was advised that if he failed to pay the fee for the preparation of the exhibit volume, this court would consider only those issues raised in his brief that did not require that portion of the reporter's record for a decision. Gandy did not pay the fee for the preparation of the exhibit volume in response to the order; therefore, the affidavit in support of the arrest warrant is not contained within the appellate record.[1] Because this court must review the four corners of the affidavit in evaluating whether the affidavit

---

[1] In his brief, Gandy appears to contend the affidavit is contained in the clerk's record; however, the clerk's record does not contain the affidavit. Gandy also attached the affidavit in an appendix to his brief; however, this court may not consider documents attached to a brief that are not included in the appellate record. *See Garcia v. State*, 549 S.W.3d 335, 342 (Tex. App.—Eastland 2018, pet. ref'd); *Blank v. State*, 172 S.W.3d 673, 675 n.1 (Tex. App.—San Antonio 2005, no pet.).

provided a substantial basis for the probable cause finding, we cannot conclude the trial court abused its discretion in finding probable cause when the affidavit is absent from the appellate record.

Gandy next contends the affidavit contained deliberate falsehoods or statements made in reckless disregard for the truth in violation of *Franks v. Delaware*, 438 U.S. 154 (1978). "Under *Franks*, a defendant who makes a substantial preliminary showing that a false statement was made in a warrant affidavit knowingly and intentionally, or with reckless disregard for the truth, may be entitled by the Fourth Amendment to a hearing, upon the defendant's request." *Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007). Thus, the defendant must: (1) make specific allegations in his pleadings of the portion of the affidavit claimed to be false; (2) provide an offer of proof stating the supporting reasons; and (3) establish by a preponderance of the evidence that the false statement was made knowingly, intentionally, or with reckless disregard for the truth. *Id*. Here, the record does not appear to establish Gandy met these burdens because the motion to suppress did not contain any specific allegations regarding the affidavit and was not accompanied by an offer of proof. Even if Gandy had met those burdens, however, he would still be required to "[s]how that when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is insufficient to support issuance of the warrant. *Id*. Because the affidavit is not contained in the appellate record, Gandy cannot meet this final burden.

Gandy's first two issues are overruled.

### VOLUNTARINESS OF STATEMENTS

In his third, fourth, and fifth issues, Gandy contends the trial court erred in denying his motion to suppress because he was not read his *Miranda* warnings before being questioned by the police, and the statements he made were involuntary. Gandy primarily bases his involuntariness

argument on his mental illness and argues the trial court failed to consider his mental illness and its effect on the voluntariness of his statement.

As previously noted, Gandy failed to pay the fee for the preparation of the exhibit volume to the suppression hearing. At the hearing, the DVD recording of the May 16, 2014 police questioning during which Gandy made the statements he sought to suppress was admitted into evidence as an exhibit and was reviewed by the trial court. The DVD recording is not, however, contained in the appellate record. In his brief, Gandy refers to a transcript of the recording which is contained in the clerk's record. That transcript, however, is attached to the plea bargain documents. Although the reporter's record of the suppression hearing indicates the transcript of the recording was referred to during questioning at the suppression hearing, the transcript was not introduced as an exhibit. Therefore, the record does not reflect that the trial court considered the transcript of the recording, as opposed to the DVD recording, at the suppression hearing. Accordingly, we may not consider the transcript of the recording in determining whether the trial court erred in denying the motion to suppress.[2] *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007) (holding appellate court reviews trial court's ruling at a suppression hearing based on record produced at the hearing unless the suppression issue is relitigated at a trial on the merits); *Whitehead v. State*, 130 S.W.3d 866, 874 (Tex. Crim. App. 2004) (holding appellate court could not consider documents that were not before the trial court at time of the trial court's ruling); *Martinez v. State*, 220 S.W.3d 183, 185 (Tex. App.—Austin 2007, no pet.) ("The appellate court must review the trial court's ruling in light of what was before the trial court at the time the ruling was made.").

---

[2] Gandy's brief also contains statements for which he cites the prosecution guide attached to the plea documents as support. We will not consider any of these statements for the same reason.

With regard to the *Miranda* warnings, Gandy appears to be arguing that he was not provided any *Miranda* warnings before he submitted to a polygraph. Detective Leroy Carrion testified Gandy's parents drove him to the police station where he was questioned by a polygraph expert and released. The record does not indicate Gandy sought to suppress any statement he made during the polygraph examination which would, in any event, be inadmissible under the law. *Tennard v. State*, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990) ("The existence and results of a polygraph examination are inadmissible for all purposes."). After he was released following the polygraph examination, Detective Carrion obtained a warrant for Gandy's arrest. Gandy was arrested, returned to the police station, and questioned. Gandy made the statements he sought to suppress during that questioning. Detective Carrion testified at the suppression hearing that Gandy was advised of his rights before the questioning. As previously noted, the trial court reviewed the DVD recording of the questioning and expressly found on the record, "Prior to the beginning of the interview, Detective Carrion read him his rights that were in substantial compliance with Article 38.22 of the Code of Criminal Procedure." Accordingly, any complaint that Gandy was not provided with his *Miranda* warnings is overruled.

Gandy next appears to contend he did not voluntarily waive his *Miranda* rights. The State has the burden to prove by a preponderance of the evidence that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010). At the suppression hearing, Detective Carrion testified Gandy indicated he understood his rights because "[he] nodded his head up and down [and] in a slow or real quiet tone he said yes." During questioning at the hearing, a portion of the transcript of the DVD recording of the questioning was read reflecting Detective Carrion asked Gandy whether he understood his rights, and Gandy responded, "Yes. Yes, sir." Detective Carrion then asked, "Do you understand what's going on?" Gandy responded, "No, sir." Detective Carrion testified Gandy was coherent,

and he believed Gandy understood why he was there; however, Detective Carrion further testified he explained the reason Gandy was there in reply to Gandy's response. Based on the testimony at the hearing and its review of the DVD recording, the trial court expressly found:

> Mr. Gandy was specifically asked if he understood his rights and he answered "yes, yes, sir." Then there was a statement and I'll concede there is a statement afterwards where he's asked if he understands what he — or what's going on and he says no but Detective Carrion was very specific in answering questions and the Court does believe that Mr. Gandy understood what he was being asked, that the drugs that he was taking did not seem to have an affect [sic] on his ability to understand the circumstances or answer the questions.

In view of the testimony, the trial court's findings, and the absence of the DVD recording from the appellate record, we hold the trial court did not abuse its discretion in concluding Gandy voluntarily waived his *Miranda* rights.

Finally, Gandy contends his statements were involuntary. As previously noted, Gandy primarily relies on his mental illness to contend his statements "were clearly not the products of [his] free choice." In his brief, Gandy relies on the competency proceedings following the suppression hearing and Dr. Skop's report obtained as a result of those proceedings to support his argument. None of this evidence, however, was before the trial court when it denied the motion to suppress; therefore, we do not consider it in our review. *See Gutierrez*, 221 S.W.3d at 687; *Whitehead*, 130 S.W.3d at 874; *Martinez*, 220 S.W.3d at 185. At the suppression hearing, Detective Carrion testified Gandy was not coerced during the questioning and was offered water. Detective Carrion further testified he believed Gandy was permitted to use his cell phone at some point during the questioning. Although Detective Carrion stated he was aware Gandy was taking medication for mental illness, Detective Carrion testified Gandy was coherent, appeared to understand his questions, and was not sleepy or lethargic. Detective Carrion further stated Gandy was not displaying any signs of mental illness and appeared competent and normal. Based on the testimony and its review of the DVD recording, the trial court expressly found:

And Detective Carrion interviewed him the same way he would interview any other person because Mr. Gandy was not exhibiting any signs of influence or being under the influence of a drug that affected his ability to give a voluntary statement or voluntarily waive his rights, and I do find that he did voluntarily waive his rights that he did voluntarily give that statement. He was at no time coerced, and he was offered refreshment.

Detective Carrion indicated, and the Court does believe, that he was at no time forced to give this statement. It is voluntary, and it was given in compliance with Article 38.22 of the Code of Criminal Procedure.

"A confession may be involuntary under the Due Process Clause only when there is police overreaching." *Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008). "The same is true for *Miranda* rights and waivers that apply to custodial-interrogation statements." *Id.* at 170. Accordingly, "due-process and *Miranda* claims of involuntariness generally do not require 'sweeping inquiries into the state of the mind of a criminal defendant who has confessed'" but "involve an objective assessment of police behavior." *Id.* at 171 (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)). Based on the testimony at the suppression hearing and deferring to the trial court's review of the DVD recording that is not contained in the appellate record, we hold the trial court did not abuse its discretion in determining Gandy's statements were not the result of police overreaching.

"Claims of involuntariness under Article 38.22 [of the Texas Code of Criminal Procedure] can be, but need not be, predicated on police overreaching, and they could involve the 'sweeping inquiries into the state of mind of a criminal defendant who has confessed.'" *Id.* at 172. As the Texas Court of Criminal Appeals has explained:

> [A]rticle [38.22] may also be construed as protecting people from themselves because the focus is upon whether the defendant voluntarily made the statement. Period. Does it appear—as Article 38.21 requires—that the statement was freely and voluntarily made without compulsion or persuasion? Or, in the case of a custodial-interrogation statement, did the suspect "knowingly, intelligently, and voluntarily" waive the rights set out in Article 38.22 § 2(a) or § (3)(a)? These inquiries do not turn solely on police overreaching. The behavior of the police may or may not be a factor. A confession given under the duress of hallucinations,

illness, medications, or even a private threat, for example, could be involuntary under Article 38.21 and the Texas confession statute.

*Id*. at 172. Because the DVD recording is not contained in the appellate record, we must defer to the trial court's findings that Gandy "was not exhibiting any signs of influence or being under the influence of a drug that affected his ability to give a voluntary statement or voluntarily waive his rights." In view of these findings and Detective Carrion's testimony at the suppression hearing, we hold the trial court did not abuse its discretion in finding Gandy's statements were voluntary.

### CONCLUSION

The trial court's judgment is affirmed.

Beth Watkins, Justice

DO NOT PUBLISH