

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00143-CR

ROBERT GOYNES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1504114D

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

Robert Goynes appeals his conviction for possession of 400 or more grams of a controlled substance with intent to deliver.[1] In a single point of error, Goynes argues that the trial court erred by denying his motion to suppress the controlled substance evidence discovered pursuant to a search warrant because the affidavit underlying the search warrant was insufficient to establish probable cause for the warrant's issuance. We affirm the trial court's judgment because the affidavit was sufficient to give the magistrate a substantial basis from which to find probable cause for the search warrant's issuance.

## I.    Factual Background

On April 4, 2017, officers of the Fort Worth Police Department (FWPD) executed a search warrant at a home located at 1720 Lincolnshire Way, Fort Worth, Texas. During the ensuing search, the officers discovered and seized over 400 grams of cocaine, firearms, and U.S. currency. The officers also found items and information connecting Goynes to the residence.

Goynes was arrested and charged with possession of 400 grams or more of cocaine with intent to deliver. Goynes entered a plea of not guilty. He moved to suppress the evidence seized during the search, arguing that the affidavit underlying the search warrant was insufficient to establish a substantial basis for concluding that probable cause existed to search the house on Lincolnshire Way. The trial court denied the motion. A Tarrant County jury found Goynes guilty

---

[1]Originally appealed to the Second Court of Appeals in Forth Worth, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

2

of possession of 400 or more grams of cocaine with intent to deliver, and he was sentenced to fifteen years in prison.

## II. First Point of Error—The Affidavit Was Sufficient to Issue the Search Warrant

In his sole point of error, Goynes contends that the search warrant executed by the officers was invalid to authorize a search of the residence at Lincolnshire Way because there was insufficient evidence to establish Goynes' identity, there was insufficient evidence to establish that he lived at the residence, and the information was too stale to justify a belief that there was contraband in the home.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress by using a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing de novo the trial court's application of the law. *Barnett v. State*, 469 S.W.3d 245, 250 (Tex. App.—Fort Worth 2015, pet. ref'd). While this appeal involves our examination of the trial court's ruling on appellant's motion to suppress, "it actually involves our secondary appellate review of the magistrate's probable-cause determination in issuing the search warrant, which is a similar, yet distinct, inquiry." *State v. Crawford*, 463 S.W.3d 923, 928 (Tex. App.—Fort Worth 2015, pet. ref'd) (op. on reh'g).

A search warrant cannot issue unless it is based on probable cause as determined from the four corners of a sworn affidavit. U.S. CONST. AMEND. IV; TEX. CONST. art. I, § 9; TEX. CODE CRIM. PROC. ANN. art. 18.01(b) (West 2015) ("No search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that "probable

3

cause does in fact exist for its issuance."); *State v. Crawford*, 463 S.W.3d 923, 928 (Tex. App.—Forth Worth 2015, pet. ref'd) (op. on reh'g). "Probable cause for a search warrant exists if, under the totality of the circumstances presented to the magistrate within the four corners of an affidavit, there is at least a 'fair probability' or 'substantial chance' that . . . evidence of a crime will be found at the specified location." *Branch v. State*, 335 S.W.3d 893, 902 (Tex. App.—Austin 2011, pet. ref'd); *see Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010); *Crawford*, 463 S.W.3d at 929; *see also* TEX. CODE CRIM. PROC. ANN. art. 18.01(c). Probable cause "does not require that, more likely than not, the item or items in question will be found at the specified location." *Flores*, 319 S.W.3d at 702. In determining probable cause, the magistrate may "interpret the probable cause affidavit in a non-technical, common-sense manner." *Id.*

When reviewing a magistrate's decision to issue a warrant, we apply a highly deferential standard in keeping with the constitutional preference for a warrant to determine whether the magistrate had a substantial basis for concluding that probable cause existed. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011); *Flores*, 319 S.W.3d at 702 (stating that the magistrate's decision should "carry the day in doubtful or marginal cases"); *see Crawford*, 463 S.W.3d at 928 ("[W]e review the trial court's probable-cause determination de novo, applying the same substantial-basis standard as the trial court."); *Whitemon v. State*, 460 S.W.3d 170, 174 (Tex. App.—Fort Worth 2015, pet. ref d) ("We must defer to the magistrate's finding of probable cause if the affidavit demonstrates a substantial basis for his conclusion."); *Farhat v. State*, 337 S.W.3d 302, 306 (Tex. App.—Fort Worth 2011, pet. ref'd) ("No magical formula exists for determining whether an affidavit provides a substantial basis for a magistrate's probable cause

determination."). The "substantial basis" standard is flexible and undemanding; it allows a magistrate to draw reasonable, common-sense inferences from the facts and circumstances contained in the affidavit. *Crawford*, 463 S.W.3d at 929.

Like the magistrate and the trial court, we should review the affidavit supporting the warrant in a common-sense, realistic manner. *Farhat*, 337 S.W.3d at 306; *Hogan v. State*, 329 S.W.3d 90, 94 (Tex. App.—Fort Worth 2010, no pet.) ("A reviewing court should not invalidate a warrant by interpreting the affidavit in a hypertechnical manner."). The issue is not whether there are other facts that could have, or even should have, been included in the affidavit; instead, we focus on the combined logical force of facts that are in the affidavit. *Hogan*, 329 S.W.3d at 94; *see Nichols v. State*, 877 S.W.2d 494, 498 (Tex. App.—Fort Worth 1994, pet. ref'd) ("A warrant is not invalid merely because the officer failed to state the obvious.").

## B.    Analysis

The affidavit, dated April 4, 2017, stated that, on March 23, 2017, as part of a narcotic operation, Officer Matthew McMeans, the affiant, placed a confidential informant (CI) in an automotive shop. The CI was tasked with speaking to the shop owners regarding the purchase of several kilograms of powder cocaine. While inside the shop, the CI saw a black male purchase one-half kilogram of powder cocaine and then leave. Officers outside the shop saw a black male leave the shop and drive away in a black Honda with a Texas license plate CSW4331. Through the vehicle's "ticket history" and a search of the Honda's license plate number, McMeans determined that Robert Goynes, a black male, was the driver of the Honda. According to McMeans, "this [fact] was confirmed when the CI was able to identify Goynes as well through a

5

mugshot." In addition, "[t]he license plate reader showed that the Honda had been at a house at 1720 Lincolnshire Way "several times into March of 2017," and further investigation revealed that Goynes had a prior history of drug-related offenses, a suspended driver's license, and "three local traffic warrants."

The affidavit also stated that, on April 4, 2017—the date of the affidavit—McMeans and other narcotics officers began surveillance of the Lincolnshire Way residence. During that surveillance, they saw Goynes leave the house, place something in the Honda's front seat, and re-enter the house. Minutes later, a white Mercedes drove out of the home's garage. The officers planned to confirm that Goynes was driving the Mercedes and then have a marked police car stop and arrest him for his outstanding warrants. However, when a marked car got behind the Mercedes "too early," the Mercedes "furtively" pulled into a service station where "it sat for a few moments while the police units left the area."

Officer Lup[2] confirmed that Goynes was driving the Mercedes. Without utilizing the station's services, the Mercedes drove back to the house on Lincolnshire Way, where it almost collided with the garage door because it was "traveling at a high rate of speed as it turned into the driveway." "Approximately 8 minutes later the garage door reopened and the same [Mercedes] backed out" of the garage and left the residence. Believing that Goynes was driving the Mercedes, officers followed and stopped the car. Officers confirmed that Goynes was driving the Mercedes. They arrested him for his outstanding warrants and for driving with a suspended license. A search

---

[2]The record does not reflect Lup's first name.

of the vehicle incident to arrest found a cigarette believed to contain marihuana in the center console.

After Goynes was arrested, McMeans executed the affidavit for a search warrant of the Lincolnshire Way residence. In addition to the information detailed above, the affidavit stated that McMeans believed that Goynes fled back to the residence "to get rid of illegal contraband" before officers could stop his car, that Goynes was found in possession of narcotics during the execution of two prior search warrants, and that the CI "ha[d] proven to be truthful and his/her information ha[d] been verified to be correct in the past every time."

Goynes argues that the affidavit was insufficient to identify him as "the person who purchased cocaine" in the automotive shop, was insufficient to establish that he lived at the Lincolnshire Way residence, and was too stale to justify the issuance of the search warrant. We disagree.

As to identity, the affidavit stated that officers saw a black male leave the shop in the black Honda, and a search of the vehicle's license plate and ticket history suggested to McMeans that Goynes was the driver of the Honda. The CI, whose information in prior investigations had proven to be true and correct every time, confirmed McMeans' conclusion by identifying Goynes from a mugshot. Though it was not explicitly stated in the affidavit, the magistrate could have reasonably inferred that the CI identified Goynes as the man who purchased the half kilogram of cocaine in the shop. *See Crawford*, 463 S.W.3d at 929. Finally, while McMeans was conducting surveillance of the Lincolnshire Way residence, he saw Goynes leave the residence and put something on the front seat of the same black Honda. Applying the deferential standard to the magistrate's

7

determination and the trial court's ruling, we find that the foregoing is sufficient evidence that Goynes was the man who purchased the cocaine in the automotive shop. *See Flores*, 319 S.W.3d at 702–03.

In regards to the residence, Goynes has failed to cite to any authority indicating that the State had the burden of proving the house at Lincolnshire Way was Goynes' residence, and we are aware of none. The affidavit need only show a connection between the defendant and the place to be searched. *See Brinegar v. United States*, 338 U.S. 160 (1949); *Cassius v. State*, 719 S.W.2d 585, 588 (Tex. Crim. App. 1986). The affidavit stated that the license plate reader showed that the black Honda in which Goynes left the automotive shop was at the residence "several times" in March 2017. McMeans also saw Goynes come out of the residence and put something on the front seat of the black Honda that was parked there. The officers watching the home did not see anyone but Goynes enter or exit the residence. Giving the appropriate weight to the magistrate's determination and the trial court's ruling, we hold that there was a sufficient connection between Goynes and the residence to create a fair probability that evidence of a crime, such as a controlled substance, firearms, and U.S. currency, would be found at the residence.

Goynes also argues that the information in the affidavit was stale because twelve days elapsed between the drug purchase at the automotive shop and the issuance of the search warrant. The facts stated in a search warrant affidavit "must be so closely related to the time of the issuance of the warrant that a finding of probable cause is justified." *McLain*, 337 S.W.3d at 272. Probable cause ceases to exist when it is no longer reasonable to presume that items once located in a specified place are still there. *McKissick v. State*, 209 S.W.3d 205, 214 (Tex. App.—Houston [1st

Dist. 2006, pet. ref'd); *Stone*, 137 S.W.3d at 178. "When the affidavit recites facts indicating activity of a protracted and continuous nature, the passage of time between the occurrence of events set out in the affidavit and the time the search warrant was issued becomes less significant." *Pair v. State*, 184 S.W.3d 329, 338 (Tex. App.—Fort Worth 2006, no pet.). "The proper method to determine whether the facts supporting a search warrant have become stale is to examine, in the light of the type of criminal activity involved, the time elapsing between the occurrence of the events set out in the affidavit and the time the search warrant was issued." *McKissick*, 209 S.W.3d at 214.

According to the affidavit, the cocaine purchase at the auto shop occurred on March 23, 2017. The surveillance of the residence, the information regarding Goynes' driving behavior, and Goynes' arrest occurred on April 4, 2017, the same date as the affidavit. When a police car followed him, Goynes stopped at the service station without utilizing its services. When the marked police cars left the area, Goynes then hurried back to the residence and into the garage and then left again, in the same car, eight minutes later. The affidavit also stated that Goynes had purchased a large amount of cocaine less than two weeks earlier, that there was a cigarette containing marihuana in the car when he was stopped, and that Goynes was found possessing crack cocaine during the execution of two prior, unrelated search warrants. *See Guillory v. State*, No. 14-97-00909-CR, 1999 WL 314865, at *3 (Tex. App.—Houston [14th Dist.] 1999) (mem. op., not designated for publication) ("almost one-half of a kilogram" of cocaine was a large amount).

In light of the type of criminal activity involved in this case, the magistrate could have reasonably inferred from the totality of the circumstances that there was contraband in the

9

Mercedes and that Goynes drove back to the residence so quickly to remove the contraband from the vehicle. *See McKissick*, 209 S.W.3d at 214. Under these circumstances, the information regarding the drug purchase was not so removed in time from the date of the affidavit to render it stale.

## III.    Conclusion

These facts found in the four corners of McMeans's affidavit and the reasonable inferences derived from them, taken as a whole, provided a substantial basis by which the magistrate could have reasonably concluded that Goynes was the man who purchased the cocaine at the auto shop, that Goynes had a connection to the residence and evidence of a crime could be presently found there, that the information in the affidavit was not stale, and that probable cause existed for the warrant's issuance. *See State v. Jordan*, 342 S.W.3d 565, 569–72 (Tex. Crim. App. 2011); *Flores*, 319 S.W.3d at 703; *Hogan*, 329 S.W.3d at 94. Accordingly, we overrule this point of error.

We affirm the trial court's judgment.


Ralph K. Burgess
Justice


Date Submitted:    February 27, 2019
Date Decided:     April 1, 2019

Do Not Publish

10