**Opinion issued April 14, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00607-CR

———————————

**LATHARIAN DEVANTE MERRITT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the Criminal District Court No. 2**
**Tarrant County, Texas[1]**
**Trial Court Case No. 1465902D**

---

---

[1]  Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal from the Court of Appeals for the Second District of Texas to this Court. *See* Misc. Docket No. 18-9083 (Tex. June 19, 2018); *see also* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases). We are unaware of any conflict between the precedent of the Court of Appeals for the Second District and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

**MEMORANDUM OPINION**

A jury convicted appellant Latharian Devante Merritt of capital murder, and the trial court sentenced him to life in prison without the possibility of parole. *See* TEX. PENAL CODE § 19.03 (capital murder); *id.* § 12.31(a)(2) (mandating punishment of imprisonment for life without parole when State does not seek death penalty and offense committed when defendant was 18 years of age or older). He raises two issues on appeal. First, he challenges the trial court's denial of his motion to suppress statements made after his arrest because he contends that his arrest warrant was not supported by probable cause. Second, he contends that a statement in the jury charge was an erroneous definition of reasonable doubt.

We affirm.

**Background**

Zachary Beloate shared a house with Ethan Walker and another roommate. Beloate was dating a teenage girl, M.S., who believed that Beloate and Walker had been selling small amounts of drugs and marijuana. M.S. and several friends decided to rob them. M.S. told one friend, Megan Holt, that a gun would be needed for the robbery. Holt recruited T.M., a teenage boy, to commit the robbery, and he, in turn, recruited three other young men: Merritt, Shawn Robinson, and J.B.

On the night of the robbery, M.S., Holt, and Ariana Bharrat went to Beloate's house at 1500 Aspen Court under the pretense of spending time together. The women

2

unlocked exterior doors, and the four men let themselves in. When one of the men pointed a gun at Beloate, M.S., Holt, and the other young woman left the room unimpeded. Shortly after, they heard gunshots and fled the house, leaving together in a white vehicle. Beloate and Walker were both shot during the robbery, and Walker later died from his injuries.

The first call for emergency services was made at 10:42 p.m., and a witness informed responding law enforcement officers that she saw three young women run from 1500 Aspen Court and drive away in a white sports-utility vehicle.

Detectives P. Knotts and S. Peacock investigated the homicide. Based on an affidavit from Det. Knotts, a magistrate issued a warrant for Merritt's arrest. The affidavit stated facts learned during an initial investigation. While still in the hospital, Beloate told Det. Peacock that M.S. had been at the house but left after the shooting. Beloate gave Det. Peacock M.S.'s address.

Detectives Knotts and Peacock went to M.S.'s house. While there, they spoke to M.S.'s brother, V.S., who said that M.S. came home in a white vehicle between 11:00 and 11:30 p.m. V.S. informed them that M.S. had been with Holt and Bharrat, and when she came home, she was nervous, and she told him that she had "hit a lick" and it "went bad." V.S. also said that M.S.'s friend had been shot.

M.S.'s mother allowed her to be interviewed at police headquarters. Detectives Knotts and Peacock drove M.S., and on the way, she directed them to

1500 Aspen Court. At police headquarters, M.S. said that she, Holt, and Bharrat were in Beloate's room at 1500 Aspen Court just before the shooting. While there, M.S. saw a text message on Bharrat's phone that said "hit a lick" and "is it a go." In the affidavit, Knotts averred that "hit a lick" means to commit a crime such as theft, burglary, or robbery. Although M.S. initially told the detectives that she left the house during the robbery, went to a nearby fast-food restaurant, and used a rideshare service to get home, she "later said she had lied about how she got home." M.S. later said that she went home with Holt and Bharrat.

After Detective Knotts told M.S. that Walker had died, she agreed to help identify the other suspects. M.S. sent several emails and photographs identifying three of the four male suspects by their nicknames or street names. The following day, M.S. was arrested for capital murder. Later, she gave another statement to police, and she provided a physical description of Merritt, whom she knew as "Larry." Sgt. T. Hewitt interviewed Holt in connection with the murder. Holt knew "Larry" socially, and she identified him as the man in the photograph provided by M.S.

Based on the affidavit, Tarrant County District Court Judge Gallagher signed the warrant authorizing Merritt's arrest. At that time, Merritt had been identified only as "Larry" and by his photograph and physical description, both of which were included in the arrest warrant.

Merritt was arrested on capital murder charges. He gave two statements to police, admitting that he had shot Walker. Before trial, Merritt moved to suppress statements he made after his arrest on the grounds that they were tainted by the illegality of his arrest. In particular, he maintained that the affidavit in support of the arrest warrant did not establish probable cause. The trial court held an evidentiary hearing and denied the motion to suppress.

The court's charge to the jury included the following statement about the State's burden of proof: "It is not required that the Prosecution prove guilt beyond all possible doubt; it is required that the Prosecution's proof excludes all 'reasonable doubt' concerning the Defendant's guilt." At the charge conference, Merritt asked the court to remove that statement from the court's charge, acknowledging, however, that the Fort Worth Court of Appeals had previously ruled that the language was not erroneous. The trial court denied the request to remove the language.

The trial court found Merritt guilty of capital murder, and because the State had not sought the death penalty, the trial court sentenced Merritt to life in prison without the possibility of parole.

Merritt appealed.

**Analysis**

On appeal, Merritt challenges the trial court's ruling on the motion to suppress his statements due to an allegedly illegal arrest warrant and the trial court's instruction to the jury that reasonable doubt is not the same as all doubt.

## I. Motion to suppress defendant's statements

In the trial court, Merritt moved to suppress statements that he made after his arrest on the grounds that the arrest was illegally "conducted pursuant to an arrest warrant and supporting affidavit that did not state sufficient facts that established probable cause for its issuance." In the pretrial hearing on the motion to suppress, Merritt argued that the "arrest warrant affidavit" "does not establish probable cause for his arrest." He argued that M.S. was the only source of information connecting him to the crime, and because she had lied to the investigating officers, she was "not a credible person." The State argued that the four-corners rule[2] required the court to consider only information found within the four corners of the affidavit and urged the court not to consider the pretrial testimony of Detective Knotts.

On appeal, Merritt makes a different argument. Rather than arguing that the facts recited in the affidavit were insufficient to establish probable cause, on appeal Merritt relies on *Franks v. Delaware*, 438 U.S. 154 (1978), to argue that the

---

[2] *See State v. Elrod*, 538 S.W.3d 551, 556–57 (Tex. Crim. App. 2017) ("In determining whether a warrant sufficiently establishes probable cause, this Court is bound by the four corners of the affidavit.").

affidavit's omission of information about M.S.'s having lied rendered the search warrant invalid.

"To preserve error for appellate review, the complaining party must make a specific objection and obtain a ruling on the objection." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (on automatic appeal in capital murder case); *see* TEX. R. APP. P. 33.1 (preservation of error). The objection must be timely, i.e., "made at the earliest possible opportunity." *Wilson*, 71 S.W.3d at 349. "Finally, the point of error on appeal must comport with the objection made at trial." *Id.*

At the pretrial hearing, the State referred the trial court to two cases that originated from Tarrant County and held that the reviewing court is limited to the four corners of the affidavit to determine whether there was a substantial basis for concluding that probable cause exists. *Rodriguez v. State*, 232 S.W.3d 55, 64 (Tex. Crim. App. 2007) ("We must defer to the magistrate's finding of probable cause if the affidavit demonstrates a substantial basis for his conclusion."); *see Montgomery v. State*, No. 02-03-425-CR, 2005 WL 1048707, at *2 (Tex. App.—Fort Worth May 5, 2005, pet. ref'd) (mem. op.; not designated for publication).

On appeal, Merritt relies on Detective Knotts's pretrial hearing testimony, which is outside the four corners of the affidavit, to argue that the arrest warrant was invalid. Because this argument was not raised in the trial court, it does not comport

7

with the trial objection, and it is not preserved for our review. *See Wilson*, 71 S.W.3d at 349.

Moreover, Merritt would not prevail on the merits of this issue. Ordinarily, we review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the facts found by the court and reviewing de novo its application of the law. *See Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). When a motion to suppress is based on a contention that a warrant was not supported by probable cause, the trial court is "bound by the four corners of the affidavit." *State v. Elrod*, 538 S.W.3d 551, 556–57 (Tex. Crim. App. 2017).

In that situation, we interpret the affidavit in a common-sense and reasonable manner, and we determine whether it states sufficient facts "to validate issuance of a proper warrant." *Lagrone v. State*, 742 S.W.2d 659, 661 (Tex. Crim. App. 1987); *see Rodriguez v. State*, 232 S.W.3d 55, 64 (Tex. Crim. App. 2007); *Whitemon v. State*, 460 S.W.3d 170, 174 (Tex. App.—Fort Worth 2015, pet. ref'd). We "focus on the combined logical force of facts" that are in the affidavit. *Rodriguez*, 232 S.W.3d at 62. "It is not necessary to delve into all of the facts that were omitted by the affiant, facts that could have been included in the affidavit, or contrary inferences that could have been made by the magistrate." *Id.* at 64. We will uphold a magistrate's finding of probable cause if the affidavit demonstrates a substantial basis for this conclusion. *See id.*; *Whitemon*, 460 S.W.3d at 174.

Relying on *Franks v. Delaware*, 438 U.S. 154 (1978), Merritt contends that the affidavit was misleading because it omitted the material fact that M.S. had been untruthful in her police interviews. Merritt asserts that if the affidavit had stated that M.S. had been untruthful, then the magistrate would have concluded that she was not credible and disregarded the information she provided connecting Merritt to the crime. In *Franks*, the United States Supreme Court held that when a governmental affiant knowingly, intentionally, or with reckless disregard for the truth includes a false statement in the warrant affidavit, and the remainder of the affidavit's content is insufficient to establish probable cause, the warrant is invalid under the Fourth Amendment, and evidence obtained as a consequence of the warrant should be excluded. 438 U.S. 155–56. "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request" *Id.* This is an exception to the four-corners rule. *See id.* Because Merritt relies on *Franks*, we construe his argument to be that there were material omissions from the affidavit that were made intentionally, knowingly, or with reckless disregard for the truth. *See Darby v. State*, 145 S.W.3d 714, 722 (Tex. App.—Fort Worth 2004, pet. ref'd)

(construing argument about omission from affidavit in light of defendant's reliance on *Franks*).

Although the Court of Criminal Appeals has not extended *Franks* to allegations of material omissions, several Texas intermediate appellate courts—including Houston's First Court of Appeals and Fort Worth's Second Court of Appeals—have done so. *See Massey v. State*, 933 S.W.2d 141, 146 (Tex. Crim. App. 1996) (court has not applied *Franks* analysis to allegations of intentional and material omissions) (internal citations omitted); *Darby v. State*, 145 S.W.3d 714, 721–22 (Tex. App.—Fort Worth 2004, pet. ref'd) (expressly agreeing with Fifth Circuit and intermediate Texas appellate courts' application of *Franks* analysis to material omissions); *Blake v. State*, 125 S.W.3d 717, 724 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (same).

In this case the record does not reflect, by a preponderance of the evidence, that Detective Knotts intentionally or knowingly, with reckless disregard for the truth, made any misstatements or omissions in the affidavit that would affect the finding of probable cause. The affidavit describes the robbery with some facts set forth in the affidavit corroborating others. For example, V.S. said M.S. arrived home in a white vehicle and neighbors reported that they saw the young women leaving 150 Aspen Court in a white vehicle. M.S. told Detective Knotts that she was part of the group that planned the robbery, that she participated and the role she played, and

that she knew some but not all the men who participated. She also provided photographs, nicknames, and descriptions of three of the four men who participated, including Merritt. Holt corroborated M.S.'s statements about Merritt's identity. The affidavit itself shows that M.S. planned and participated in the robbery and that she had personal knowledge that Merritt also participated.

The arrest warrant affidavit described one lie told by M.S.: "[M.S.] said that she ran out of the house during the robbery and went to a nearby McDonald's where she met a friend who called her an Uber. [M.S.] later said she had lied about how she got home and told me she went home with [Holt] and [Bharrat]." M.S.'s untruthfulness about how she got home does not impact the probable cause analysis because how she got home that night is not material to whether she had seen and could identify the others who participated in the crime.

Merritt relies on testimony from Detective Knotts in the pretrial hearing in which he acknowledged that M.S. had lied to him:

Q. And she [M.S.] had lied to you repeatedly, correct?

A. She did lie, yes, sir.

Q. Okay. You didn't put in your affidavit that when you'd interviewed [M.S.] a couple of times or—I don't know how many times, but however many times you did, that she lied to you those times, did you?

A. In the affidavit?

Q. Right.

11

A.    No, sir.

The record does not indicate anything else that M.S. lied about or whether it was material to a determination of probable cause. Therefore, even if we were to review this issue under a *Franks* analysis, we would conclude that Merritt did not carry his burden to prove by a preponderance of the evidence that there were material omissions from the affidavit that were made intentionally, knowingly, or with reckless disregard for the truth.

We overrule Merritt's first issue.

## II.    Motion to suppress defendant's statements

In his second issue, Merritt argues that the trial court erred by providing a partial definition of reasonable doubt in the court's charge to the jury. Specifically, Merritt challenges the following instruction:

> It is not required that the Prosecution prove guilt beyond all possible doubt; it is required that the Prosecution's proof excludes all "reasonable doubt" concerning the Defendant's guilt.

> In the event you have a reasonable doubt as to the Defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "Not Guilty."

Merritt asserts that the courts of appeals are split on whether these instructions are erroneous, yet he concedes that both the First and the Second Courts of Appeals have held that it is not error to include that language in a jury charge. *See Burrows v. State*, 492 S.W.3d 398, 408 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd);

*Frank v. State*, 183 S.W.3d 63, 79 (Tex. App.—Fort Worth 2005, pet. ref'd). In addition, the Court of Criminal Appeals has held that inclusion of that language in a jury charge is proper. *See Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010); *Woods v. State*, 152 S.W.3d 105, 115 (Tex. Crim. App. 2004).

We overrule Merritt's second issue.

## Conclusion

We affirm the judgment of the trial court.

Peter Kelly
Justice

Panel consists of Chief Justice Radack and Justices Lloyd and Kelly.

Do not publish. TEX. R. APP. P. 47.2(b).